IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| CANDACE J. JOHNSON | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. TMD 10-947M |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Candance J. Johnson ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Supplemental Security Income ("SSI") under Title XVI and of the Social Security Act, 42 U.S.C.§§ 1381-83(c). Before the Court are Plaintiff's Motion for Summary Judgment (or Remand) (Pl.'s Mot. Summ., ECF No. 17), Defendant's Motion for Summary Judgment. (Def.'s Mot. Summ., ECF No. 22) and Plaintiff's Rebuttal to Defendant's Motion for Summary Judgment. (Pl.'s Rebuttal, ECF No. 23). No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons presented below, Defendant's Motion for Summary Judgment is GRANTED.

I. Procedural History

Plaintiff protectively filed her application for SSI on October 20, 2006 alleging disability

since 1997, subsequently amended to October 20, 2006,[1] on the basis of attention deficit hyperactivity syndrome ("ADHD"), mental issues, asthma and sinusitis. R. at 27, 29, 30, 130-35. Her claim was denied initially and on reconsideration. R. at 59-62, 65-66. On January 20, 2009, a hearing was held before an administrative law judge ("ALJ") but was continued so that Plaintiff could seek out legal representation. R. at 51-56. On May 14, 2009, a full hearing was held at which Plaintiff was represented by counsel. R. at 23-50. A Vocational Expert ("VE") testified. In a decision dated July 15, 2009, the ALJ denied Plaintiff's request for benefits. R. at 6-19. On February 24, 2010, the Appeals Council denied Plaintiff's request for review rendering the ALJ's decision the final decision subject to judicial review. R. at 1-3.

## II. ALJ's Decision

The ALJ evaluated Plaintiff's claim for SSI using the sequential process set forth in 20 C.F.R. § 416.920. At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ determined that Claimant suffered from the following severe impairments: ADHD, anxiety disorder, mixed receptive and expressive language disorder, borderline intellectual functioning, asthma, sinusitis/allergies and obesity. At step three, the ALJ found that her impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1. The ALJ concluded at step four that Plaintiff had no past relevant work. At step five, the ALJ concluded that Claimant was capable of performing jobs that existed in significant numbers in the national

---

[1] Claimant amended her onset date to her 18th birthday rendering this an adult benefits claim. R. at 27.

economy. Accordingly, he concluded that Claimant was not disabled. R. at 6-19.

### III. Standard of Review

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

### IV. Discussion

Plaintiff argues that the ALJ erred in giving great weight to the opinion of consultative examiner, Dr. Rahsaan Lindsey and that greater weight should have been given to the opinion of Dr. Marta Wild, her treating physician. Pl.'s Mot. Summ. at 10. Under the "treating physician rule" a treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical evidence and not inconsistent with other substantial evidence

of record. *See* 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2); *Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir.2001). However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater,* 76 F.3d 585, 590 (4th Cir.1996); 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). "Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro,* 270 F.3d at 178.

Here, the ALJ noted Dr. Lindsey's opinion that Claimant had a Global Assessment of Functioning ("GAF")[2] score of 65 and gave that opinion great weight as it was consistent with her essentially normal activities of daily living and lack of mental health treatment or medication. R. at 16, 300. Plaintiff argues that a GAF score of 65 does not indicate essentially normal functioning but indicates some difficulty in social, occupational, or school functioning. Pl.'s Mot. Summ. at 10. The Court does not find the ALJ's findings inherently contradictory as Plaintiff suggests. A GAF between 61 and 70 indicates only *some mild* symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household). However, it nevertheless indicates that the individual is generally functioning pretty well and has some meaningful interpersonal relationships. DSM–IV Manual at 34. This is precisely what the ALJ found based

---

[2] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 61 and 70 indicate some mild symptoms or some difficulty in social, occupational, or school functioning. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed.1994) ("DSM–IV Manual").

4

on a review of Claimant's activities of daily living. The ALJ noted that Claimant showered daily, helped her mother vacuum and clean, went outside every day and enjoyed roller skating, reading books and watching television. R. at 12, 14, 34-36, 216-23. He also noted that she talks on the phone with friends, goes to the mall with her sister, although she is shy and avoids crowds of people. *Id*. Moreover, the ALJ specifically found the extent of limitations alleged by Claimant (and her mother) were not fully credible. For example, Claimant's mother testified that she cannot be left alone, but reported to Dr. Lindsey that during her evening job, she calls on her daughter to check on her. R. at 16, 299. In addition, the Claimant's mother reported Claimant does not use a computer, but reported to Dr. Lindsey that she enjoyed surfing the internet. *Id*.

Plaintiff further argues that the ALJ should have given greater weight to the report of Dr. Marta Wild who Plaintiff asserts is her treating physician, R. at 302-08. At the outset, there is no evidence in the record which would support the conclusion that Dr. Wild was Claimant's treating physician; and indeed, Plaintiff points to none. R. at 302-08. In fact, Dr. Wild was a physician who reviewed the evidence of record and completed a "Childhood Disability Evaluation Form." *Id*. The record does not demonstrate that she either treated or examined Claimant. Accordingly, Plaintiff's implicit citation to the "treating physician rule" is misplaced. In fact, Dr. Lindsey was a consultative examiner who performed a thorough examination of Plaintiff on March 15, 2007. R. at 297-301. The regulations provide that generally, more weight is given to the opinion of a source who has examined a claimant than to the opinion of a source who has not examined him or her. 20 C.F.R. 416.927(d)(1). Moreover,

5

Dr. Wild reviewed the record according to the criteria necessary to establish *childhood* disability. As mentioned above, Claimant amended her alleged date of onset to her 18th birthday rendering the determination here strictly for a claim of adult disability. Therefore, it was proper for the ALJ to disregard the evaluation. R. at 16-17.

Plaintiff also directs the Court's attention to the Psychiatric Review Technique form completed by state agency consultant, M. Walkett, Psy.D.. R. at 311-24. Dr. Walklett concluded that Claimant suffers from ADHD, mixed receptive/expressive language disorder and anxiety. R. at 312, 316. However, she was unable to assess Claimant's degree of limitation in any area of functioning because of insufficient evidence.[3] Plaintiff also points to the Speech and Language Evaluation Report completed by Melissa Gofstein, M.S. CCC-SLP at the referral of DDS. R. at 294-96. Ms. Gofstein concluded that Claimant's receptive and expressive language skills are "slightly below average." R. at 296. Indeed, the ALJ accurately summarized Ms. Gofstein's report and noted her conclusion. The Court finds that the ALJ's RFC which indicates that Claimant is limited to understanding, remembering and carrying out simple instructions and limited to only occasional interaction with the public takes into account her "slightly below average" receptive and expressive language skills. *See also* R. at 15-16, 299 (report of Dr. Lindsey noting Claimant's speech to be "clear, coherent [and] regular rate but was not spontaneous and low in tone"). Similarly, the psychological testing performed by the Baltimore County Public Schools indicated that Claimant is functioning in the "upper limits of

---

[3] In any event, Plaintiff apparently does not dispute that she does not satisfy the criteria of the Listings at step three of the sequential evaluation. *See* R. at 17 (ALJ giving "weight to [Dr. Walkett's] opinion to the extent that the

6

the Borderline range." R. at 340. The ALJ's RFC took into account her intellectual ability by limiting her to understanding and carrying out simple instructions and limiting her to only occasional interaction with the public. *See, e.g.*, R. at 299 (report of Dr. Lindsey finding Claimant's thinking to be logical and linear but extremely concrete). There is no basis for Plaintiff's conclusion that her "low intellectual functioning" and mixed expressive/receptive disorder renders her disabled.

Next, Plaintiff argues that the ALJ erred in concluding that her statements regarding the intensity, persistence and limiting effects of her symptoms were not entirely credible. R. at 14. "Assessing the credibility of a claimant's symptoms of pain is a two-step process." *Craig v. Chater,* 76 F.3d 585, 594 (4th Cir.1996); SSR 96–7p. First, a claimant must establish, by objective medical evidence, the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.... If a claimant meets this burden, the ALJ must then evaluate the manner in which the intensity and persistence of these symptoms affect the claimant's ability to work.... In so doing, the ALJ must consider not only the claimant's statements about [his] pain, but also 'all the available evidence, including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical

---

claimant should be evaluated under Sections 12.02 and 12.06).

7

treatment taken to alleviate it." *Craig,* 76 F.3d at 594–95.  Here, the ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  However, he further found that her statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they were inconsistent with the RFC.  R. at 14.  The Court has reviewed the ALJ's findings in this regard and finds no error.

Finally, Plaintiff argues that her chronic asthma and severe sinusitis, when considered in conjunction with her mental impairments, render her unable to work.  The ALJ thoroughly reviewed Claimant's physical impairments.  He noted that the CT scans of the sinuses reflected only moderate muscosal thickening suggestive of chronic sinusitis.  R. at 14, 520.  He noted that she takes medication for asthma and sinusitis/allergies but that these conditions do not limit her functioning as alleged.  R. at 15.  He noted that she plays basketball and skating and goes outside daily.  There is substantial evidence to support the ALJ's conclusion that although "severe" impairments, they her conditions are under "fairly good control."  R. at 15.

V.  Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED.  A separate order shall issue.


Date: October 27, 2011  _____/s/_____
THOMAS M. DIGIROLAMO
United States Magistrate Judge


Copies to:
Scott B. Baron
Hochberg, Costello and Baron

528 East Joppa Rd.
Towson, MD 21286


Allen F. Loucks
Assistant United States Attorney
United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692